Thank you, Your Honors, and good morning. My name is Chase Coburn. I represent the appellants in this matter. I'm joined here by my co-counsel this morning, Mr. Handel and Mrs. Bogorad. Thank you for hearing an argument in this matter. I'd like to reserve five minutes for rebuttal, if that's okay. I please welcome to the court. Thank you. May it please the court. The appellees have admitted in their complaint that all of the alleged defamatory statements in this case were made in a public forum on an issue of public interest. Those admissions appear on pages 43 through 47 of our opening brief and include allegations that the operative online statements generated enough public interest to deprive the appellees of a market and influence over 90 percent of their customers. So, counsel, let's be clear what they admitted. That may be what they admitted, but that doesn't acknowledge that that is of public interest. Well, Your Honor, we would... I mean, I understand your argument is that that satisfies public interest, but what case do you have to rely on for that? That the market harm generates? Yeah, market harm to an individual company is of public For example, the Computer Express case acknowledges that it was actually investor harm in that case. That was the damages that were alleged. They said that the statements were going to dissuade investors from investing in the company, and the court said that that was... clearly it was important enough to the public to generate a public interest on that basis. So, and we also rely on the Bonney case, which says that we're supposed to take the complaint at face value. We're supposed to assume that the complaint means what it says, and if they're saying that this was of sufficient public interest to dissuade customers from purchasing their products, then that is something that is definitely within the public interest. I mean, but the issue, obviously, though, is that these are not just kind of any statements about, you know, I went to this restaurant and I found it unsatisfactory. It seems to be part of just this larger, really personal dispute between the parties. How is that in connection with the public interest or issue? Well, I think it's both, Your Honor. I think that there are certainly personal aspects to any statement. I think anybody who makes a statement has some kind of personal interest in what they're saying, but that doesn't take it out of the public interest. That's what the Geiser case says. It says that just because something has a personal motivation doesn't necessarily mean it's not in the public interest. But does this mean that anybody can just post anything? I mean, some of these comments are very troubling. Anybody can just post anything on the Internet, on a website like this, and then we come in and have an anti-SLAPP motion that should succeed? No, Your Honor. There are exceptions to the public interest, the anti-SLAPP statute. There's exceptions for, you know, statements that would be illegal as a matter of law, statements maybe on like a criminal extortion type of scenario or true threats that, you know, implicate violence. Those would be outside the anti-SLAPP. Nothing like that's alleged here. So these statements are not alleged to be illegal as a matter of law. They're alleged to be defamatory and libelous. That's it. So that's a classic anti-SLAPP situation. How do you distinguish the end case, the fake pills case? Yes, Your Honor. So that case, I would first note that it's at least questionable whether that case is still good law after the Geiser decision, which kind of eliminates this dichotomy between personal and private. That case seems to assume that it can only be one or the other. It can be public or private. So we disagree with that. We think that that's wrong on the law. But even if it's still valid, we think that that case is distinguishable because all of the statements in that case were addressing the private dispute. Okay? So the private dispute was over a cake order. All of the statements were about the cake order. In this case, the only private dispute that's been alleged is a parking lot, parking space dispute. None of the statements talk about a parking lot, parking space dispute. They're all about the business, and that's admitted in the complaint. They're all about the products and the services, and that's a classic example of speech in the public interest. Is it your understanding that any of these statements were true? Do you contend that? Because your brief almost said the opposite, that they're so outlandish that nobody would think they're true. So our position is that at this stage, there's no question. It's really simply not a relevant question of whether it's true or not, right? Falsity is alleged in every single defamation case, every single trade libel case. So that is acknowledged as an allegation in every case, but that's not what the dispute is over at step one or step two. For purposes of this appeal, we're not challenging the falsity of the statement. That is certainly in dispute below. If this case were to go to trial, that's certainly going to be part of the dispute. But for purposes of this appeal, that's not part of the dispute. We're not contesting that. Is anything happening in the district court, or has this case been stayed pending the appeal? It's been stayed, Your Honor. It's been stayed. You may be aware that some months ago, the court granted en banc review in an anti-SLAPP case called Martinez v. ZoomInfo, and that case is presently stayed. That case raised some of the same questions that could be at issue in this case about whether the court has jurisdiction under the collateral order doctrine, whether the anti-SLAPP statute applies in federal court. Do you think those are issues that should be reevaluated in this circuit? Not in this case, Your Honor. That has not been raised by either of the parties in this case. It's not an issue in this case, so I don't think it's an issue that's appropriately before the court in this case. How about with respect to the collateral order doctrine, because that is jurisdictional. That goes to our ability to hear that, and we have case law that says you can do exactly what you did here, which is that you can file this interlocutory appeal. But some judges on the court have written separate writings, including in Martinez v. ZoomInfo, questioning that. Yes, Your Honor. So I think it's just been assumed by the parties that the court is bound by the current Ninth Circuit law on this issue. So there's not been any briefing on that. There's not been any argument. So frankly, I'm just not prepared to address an issue that just has not been raised in the briefing and not before the court. And I think there is controlling law, at least for now, on the matter. If the court doesn't have any other questions, I think I'll save the rest of my time for the water.  Okay. Thank you. All right. Thank you. We'll hear from the other side. Good morning, and may it please the Court. Owen Praskowitz on behalf of Appellees Andrew Malone and American Pizza Manufacturing. Your Honors, appellants ask this court to close its eyes and cover its ears to the motivations that underlie appellant's conduct at issue in this case. Under both their prong one and prong two arguments, appellants contort the real world context of the allegations and evidence in the record before this court. This court should reject those arguments and affirm the district court's holding that appellants failed to meet their burden under prong one to show that their actions were brought in the public interest and that appellants forfeited at least some of their anti-SLAPP claims in this case. So on the public issue, public interest, where is the line here? Because I think you would agree that some statements made about a business and how good that business is or bad that business is, those would be in the public interest. Do you agree with that? I can agree. There are hypotheticals where that could be the case. This is not that case. Just to pause there, I mean, as a category, statements made about a business could be in the public interest. Could be, Your Honor, yes. But the difference between this case and a case where that was the only allegation at issue is that here we have the express allegations and evidence supporting that this is about much more, not even much more. This has nothing to do with the products and services at issue in this dispute. We have evidence from former Gopher Media employees that they pay their employees to write these false reviews. Right, but the comments were made about the products. Can you distinguish the Geiser case? Because that seems to be the one that is giving them a little bit of traction here. I think between Geiser and I think they rely a lot on Wilson v. CNN as well. And I'll address Wilson, but first to Geiser. I first want to note that I think for appellees the preeminent case should be Film-On. Film-On stressed the importance of looking at the context of the dispute. More than just the statements. More than just the statements. And I'll get to Geiser in a moment. But appellants argue that Film-On is not applicable to this case because it was under subdivision E-4 of the anti-SLAPP statute under the catch-all provision. They say here they're seeking protection under E-3. If Film-On has no application to this case, Geiser certainly has no application to this case because Geiser was an E-4 catch-all provision case. The entirety of Geiser was an expansion and a clarification of the court's Film-On precedent. So if we're not going to look at Film-On, we can't look at Geiser. But more importantly, under... Can I back up? Because you made a comment about the motivation. How do we evaluate the motivation on effectively a motion to dismiss? I mean, that has to be alleged in the complaint. So you can... I mean, does that give too much of a benefit to the plaintiffs to sort of characterize how these are? Because we have to take that as true. So if a plaintiff characterizes this as a private dispute, does that somehow bind us on how we analyze that? I think to the extent Wilson has any applicability here... Again, Wilson was also an E-4, a subdivision E-4 catch-all provision case. But if Wilson has any relevance to this case, it answers that question. Because Wilson also was an employment context case. It's not clear it has application beyond that. But if Wilson has application here, Wilson addressed, in the employment context, allegations where an employer was alleged to have discriminated or retaliated against an employee. And lower courts, state courts, were taking those allegations as dispositive of the issue. And they didn't look at anything presented from the defendants in those cases to counteract. They said, oh, once we have these allegations, that's it. Wilson said, no, you're allowed to look at the defendant's evidence that might run contrary to the plaintiff's allegations in those cases. The... Wilson was very express in saying they don't prohibit the looking at motivations, but they don't say... They said allegations alone equal in the face of evidence to the contrary. That's when... If a defendant were to... What evidence to the contrary is there? Because this is at a motion-to-dismiss stage. Well, there's some dispute. First of all, I don't want to get away from the fact that under Prong 1, it is the defendant's burden to show that there's public interest. And appellants have every right to introduce evidence under their Prong 1 analysis to support their public interest. I want this Court to look at the record that appellants introduced in front of the district court, specifically the declarations of Mr. Thakor and Gopher Media's CFO. Not one paragraph in those declarations addresses public interest. In fact, the entirety of those declarations disavow any connection to the statements at issue in this case. They say they had nothing to do with these reviews. How can they speak to the public interest if they have nothing to do with the reviews? In Mr. Thakor's declaration... But this is on the... You're referencing declarations, so this is really not... I mean, this gets into some of these issues with the anti-SLAPP statute of are we reviewing legal sufficiency or factual? But here we're talking about something that's outside of the complaint, if you will, outside the pleadings. Yes, Your Honor. The anti-SLAPP statute itself provides that courts can look at evidence and allegations. The reason I want to harp on the evidence, the absence of evidence, is because on the allegations alone, to get to, Judge Nelson, your concerns about allegations alone, the allegations here in this case is that this is not a public interest case. For the defendants to counter those allegations, they can introduce evidence under the prong one stage to counter that. They did not do so here. So that's why I would say on the allegations alone. But we don't have just allegations. Again, the court can look at the evidence. We have testimony from former Gopher Media employees that said they were paid to write fake reviews about APM. We have testimony from Andrew Malone saying that this dispute originated from a parking dispute. We have testimony from former Gopher Media employees that say this is Gopher Media's business practice for them to be paid to write fake reviews about businesses. This is about much more than products and services, as appellants want this court to argue. What does the record show about who owns the other pizza place? Is that owned by the appellant? There's testimony. We have testimony from a former Gopher Media employee that Mr. Thakora has a 25 percent ownership interest. It seems to be disputed or? It is disputed, and that's why we didn't bring this case under the anti-SLAPP exception for commercial speech, because there has to be a showing of ownership from the other side, and these are rival businesses. We're certainly going to present that at trial, but for the purpose of the anti-SLAPP statute, we didn't dive in on that. I think it's important to note that Mr. Thakora had an interest in the rival pizza shop, but I think regardless of his ownership in the pizza shop. Perhaps as a client, if nothing else. Sure. He liked their pizza. Exactly. But what I want to touch on briefly, and I see I don't have too much time left, Your Honor brought up the Yang case, Woodhill Ventures. It's notable that in their brief, they do not try to distinguish the facts at all. Today was the first time I heard them trying to distinguish the facts in Woodhill Ventures. That case is on all fours with this case, where the court rejected the defendant's public interest argument, saying that it was in pursuit of his own vengeful retribution. That's what the district court agreed with here. The only distinguishing point that appellants have made as to Woodhill Ventures is their reliance on Geiser. Geiser, again, it's an E-4 catch-all provision case, so I would say it has no bearing here if we're not going to follow film on. But the importance in Geiser, and what the court was looking at in its concern about the commingling between private and public interest, is that in Geiser, the defendants introduced evidence that said that they were pursuing the, I think it was a protest in that case, public interest. So the court had contrary evidence to the allegations that it was a private dispute. That is absolutely not the case here. And if we look at the policy implications of a defendant's arguments, what appellants are saying is that simply by making statements online about products and services, affecting a large enough market, then any such statements are immunized. If appellants wanted to go online and say that American pizza manufacturing put razor blades in his pizza, completely false, no truth, but they put that online and they speak it to a loud enough audience, those statements are presumptively protected. That is not what the anti-slap statute is meant to protect. They might argue, oh, well, we could flesh this out under a prong to merits analysis. But that would eviscerate any meaning to the step one analysis. The merits analysis is fact intensive. A lot of these anti-slap statutes are brought early in a case before the record is developed. There's a reason the appellants have the initial burden. And simply because there are allegations of market effect, products and services does not meet the public interest inquiry. I think the Woodhill case addressed a very similar market effect theory in that case. And the language was, just because the volume is loud does not make the content worthy. And I think that is exactly what's going on here. Just because Mr. Thakur has a large social media following, just because he employs a digital media company that knows, they're in the business of reviewing businesses and curating online content, that doesn't mean they can't do online reviews. There's been some companies that extort this. They'll post the online reviews, and then they'll go and say, if you paid $20,000, $50,000, we'll get these off. Is that, that's not going on here? I have not seen evidence of that. I do know that we have testimony from a former Gopher Media employee that says this is not exclusive to APM, that Mr. Thakur employs this business across the board. I think they deal with a lot of doctors' websites and such. But in my limited time, I want to address the Martinez case that Your Honor mentioned. And I think going back a ways, we did mention this in our brief. Our client said it was not brought at issue, but for page 47 and page 48 of the appellee's response brief, we identified Judge Gould's concurrence in Planned Parenthood. And I know, Your Honor, Judge West, you, in your decision, in your concurrence in Salveson v. Kessler, you, you, you, you highlighted Judge Gould's concurrence in Planned Parenthood about the tension between the interlocutory appeal and the collateral order doctrine. Now, I know there's tension between the 60-day deadline in, in state court and the federal rules of procedure when you can bring an anti-SLAPP motion. I want to focus on the Perhaps this is not the case. Martinez might be a better case for overruling the precedent on allowing interlocutory appeals. But this is the kind of case that the California Supreme Court warned of in Newport Harbor, where an appellant, like defendants, can, I'm sorry, where appellants could wait until the eve of trial to file an anti-SLAPP motion, stop the case dead in its tracks after two years of litigation, after appellants were given a two-month extension to file their anti-SLAPP motion on the deadline that their initial anti-SLAPP motion was due. This is the pretrial motion cutoff. They asked for another extension. They were denied for lack of diligence. And then they revived their anti-SLAPP motion. This court should affirm the district court's forfeiture ruling to at least keep some guardrails in place for, for litigants who, who intentionally delay. In the record for this court, if this court looks at my declaration in support of the opposition to the anti-SLAPP motion, they will see that in meeting and conferring about the anti-SLAPP statute, counsel for appellants, who's not here with us today, Ms. Chalk, made clear that she intended to appeal the anti-SLAPP ruling, regardless of the outcome. She, she intended to appeal it before even filing the motion. We understand the intent. And I don't know, I, I believe this panel is not the court that granted Appellee's motion to expedite this appeal. But if this court does look at that record, they'll see that appellants in this case have done everything but want to get, but trying to take it to trial. Appellees sued, appellants sued Appellee's witnesses. They sued Mr. Malone's girlfriend in a separate lawsuit to get discovery that they, that they couldn't get before the discovery cutoff in this case. This is, the fact that we are here. Well, if I, if I were representing their client, I wouldn't want to put that client before trial either. The jury would not be kind. Yes, Your Honor, and that's why, that's why appellees are adamant that this case needs to get to trial, and, and we hope this court can issue a ruling as soon as possible. Judge Press brought up potentially taking it en banc. Would you oppose that because you want it expedited, or do you think that you're trying to allow the best interests of justice to be served? That's a, that's a tough question to, to answer, Your Honor. For my client's interest, and that's who I'm here on behalf of, I would say this should not be the case. I, I, I personally, I, I believe the law should follow that, that in the interest of justice, the, the, this could be the vehicle for the court to overrule the interlocutory appeal process for anti-slap statutes. If this court was inclined to do so, we would understand that. But in the interest of justice for Mr. Malone and American Pizza Manufacturing, who did not bring this fight, they were sued by Mr. Thakor three years ago. They were the ones brought into the courtroom. They have spent countless resources on this case. Appellants have hired a team of lawyers, not just in the district court, but here on appeal as well. It is difficult for a small business like American Pizza Manufacturing to litigate an anti-slap motion on appeal before even getting to trial. So we would ask that this court issue its order as soon as possible if, if it could. I believe we only have a few seconds left before, but if this court is inclined to get to the prong two analysis, which we don't think this court needs to get to, I just want to focus quickly on the dichotomy between appellant's argument that the court should ignore all of the context under prong one, but under prong two, we're going to look at the context and say that these statements are, are sarcastic. They're hyperbole. The, the very statements at issue in the case, a, a, a reader would, would see them and they would have no idea that these are false reviews. I believe we have one of the statements from a former Gopher Media employee who, who wrote on Yelp. I assure you that all of these statements are factual. This is not the kind of conduct that the anti-slap statute was meant to protect. This court should affirm the district court's ruling and unless this court has any other questions, appellees submit. Thank you. Well, we have a few minutes left for rebuttal. Thank you, your honor. So, I'd just like to clarify, the only conduct before this court on this appeal are six statements that the counterclaims arise from. And those counterclaims have been asserted against the appellants. Now, I heard counsel. Well, I'm not sure that, is that true? I guess that's true. I guess by damages, it would be more than just that. I mean, those six are what would serve as, as defamation, but there's a whole lot more than six statements, fault statements. And so, I suppose those others would still roll into damages? No, your honor. The trial court has already ruled that the other statements that are alleged in the complaint are non-actionable. These are the only six statements that survived. They've already told the district court below that their entire counterclaim arises from those six statements. So, the whole practice of hundreds and hundreds of fake negative reviews is not actually the case? That is not an act of defamation or an act of trade libel that's been alleged. So, in the Bonney decision, all of that is disregarded for purposes of step one. None of the non-protected conduct is considered as part of the analysis. The court is supposed to focus on these statements. Now, I heard counsel say that these statements have nothing to do with the products and services. That is not what their complaint says. And under the gun decision out of the Ninth Circuit, which relies on California law, the complainant cannot disregard or disavow their allegations in the complaint. So, I'm looking at the six statements. So, one of them is that the owner of APM kicks handicapped dogs. To what extent is that in the public interest? To make a statement that I don't think you actually defend the truth of that statement. Your Honor, that statement is a criticism of the business. It says further that... Is it true? Is it true that the owner of the APM pizza store kicks handicapped dogs? I don't know, Your Honor. I do not know whether that is true or false. But regardless of whether it's true or false, which, again, falsity is alleged in every defamation case. How is it related to the business? It's related to the business because he's criticizing them. In the context of that statement, if you read the statement, if you read the whole statement, he's saying anybody who supports this business supports animal abuse. The problem is, yeah, and I think that's the problem, though, is that now you get into... I mean, now it sort of supports your opposing counsel's argument, which is some of these are not related to the business or your definition of related to the business is so great that it's like we can just criticize anything in the personal character of a CEO of a company and that relates to the business itself. That seems to stretch public interest a bit. So I don't think that's quite our argument, Your Honor. I wouldn't say everything that you say about a business is protected. I think, number one, the allegations control. That's clearly established under the Bonney decision, under the Bel Air decision, which says we don't have to go... if the allegations establish protected activity. So once they've alleged that all of the statements are about their products and services, which that is alleged explicitly in the complaint, and they've alleged that there was enough interest to influence 90% of their customers, that's enough for E3. Now, if these were private statements... I must say, how can you argue that putting something on the Internet that accuses somebody of kicking handicapped dogs when you're not prepared in court to tell me that that's a true statement, how could that possibly be in the public interest to put that out there? Our client maintains that that is a true statement. He testified under oath that that's a true statement. So I would agree with that. I have no reason to doubt that. But what I'm telling the court is the falsity of that statement, even assuming falsity, just for the sake of argument, it's still a public interest statement because every single statement... There's cases that say even if... I think in one case the statement was acknowledged to be false. It was admitted to be false. To what end does your client engage... Because it doesn't seem to be disputed that your client has a clear disagreement with this pizza shop. To what end is your client pursuing this course of conduct? What does he hope to gain by this? To what end does my client hope to gain by... By posting things on the Internet that says that the pizza place kicks handicapped dogs, that he walked in and it smelled like old fish, that the owner laughed at me, that he called me a racist slur. What is he trying to achieve through this? He disputes that some of those statements were made by him, first of all. So these statements were not necessarily made by him. Well, right, but they were made by employees who worked for him. I mean, you don't deny, at least at the allegations, that there was a concerted effort. I think that there is a dispute, Your Honor, and frankly that's just not an issue on appeal. But what is the goal here? I mean, help me understand, what is the nature of the dispute? Your client is the one who actually is the plaintiff in the case. So what is the nature of the dispute? What does your client hope to obtain through this litigation? Your Honor, I can't speak to that. I really don't know. Is he a pizza purist and he thinks that pizza companies should be run by only good and honorable people? I don't know, Your Honor. I don't know the answer to that. I don't know the answer to that. But what I do know is that those allegations in our complaint are not an issue before the court. Our claims are not before the court. The counterclaims are before the court. And there is no dispute that those allegations arise from productive activity in this case. You know, there's lots of speech that is malignant and base, and the U.S. Supreme Court, this court, has repeatedly said that doesn't mean it's actionable, right? The statements may be reprehensible. The allegations are true in this case. The conduct may be reprehensible. It may be less than admirable, certainly, but that doesn't mean it's actionable for defamation or trade libel. That's what this is about. So I think, frankly, just respectfully, I think we're getting into issues that are just really not relevant if we're looking at whether we like this speech or not, whether it's good or bad. I don't think the court is struggling with, if we allow this to go forward, where's the limit? I mean, we're already inundated with these types of issues up on appeal, and we'll just get more of them because society is, sadly, going more the way of your client than away from it. And we're getting more defamation out there. Social media has exacerbated this problem, and if we don't put some limits on the difference between public and private disputes, we'll just open up the floodgates. Well, I think their argument does open up the floodgates, Your Honor, because I think it does make the federal courts content moderators in the social media space. Not content moderators, but even you would agree we have to ask the question about whether this is in the public interest or private. I mean, I guess you just want to say that as long as it affects the business, it's in the public interest. What test do you want us to apply? I want the court to apply the test in the Bonney decision. Which is what? How would you describe that to me? Whether the allegations in the complaint establish that the statements, whether they allege that the statements are in the public interest. If they allege that the statements are in the public interest, that's sufficient. That controls the case for purposes of step one. This is a prima facie burden. This is not supposed to be some fact-intensive analysis. It is based on the allegations. And I just want to note, you know, there's been a lot of discussion about motivation and, you know, what the client wants to do. But under the Wilson decision, which is controlling California Supreme Court law, that is completely irrelevant. If that was controlling, then anybody could get past an anti-slap statute by simply alleging bad motives and bad acts and a lot of other conduct unrelated to the statement. No, I understand it. But your rule allows anybody to advance an anti-slap statute by saying, well, it's clearly in the public interest. So we've got to do some line drawing here. So I think one potential line, Your Honor, is when you – my time is expiring, if I can answer the question. Yes, please. The one line could be whether the statements are actually warning consumers, whether they're directed to consumers, as opposed to, you know, private statements like in Filmon or Wilson. And in that context, when it is purportedly a warning to consumers of any kind, we all know just from personal experience, we care about those opinions. We all take them with a grain of salt when we look at opinions on products and services. But we do, as a public, care about what people have said, even though we all discount it accordingly. So anything on the Internet then? Or are there lines there too? Not anything on the Internet, Your Honor, but statements that are purportedly about the business's products and services. If that's what it's directed to, if it's addressed to consumers, then that is, under longstanding law, a public interest. And I think in the modern marketplace especially, it's in the public interest. Thank you, Your Honor. Thank you. The case of Coframedia v. Malonitz is submitted. And we're adjourned for this session. All rise. This court for this session stands adjourned.
judges: IKUTA, NELSON, BRESS